# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| LEWANNA E. JORDAN, Natural Guardian and Next Best Friend of O.J.S., a Child, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RHONDA MOODY, Deceased, Individually and in Her Capacity as Probation Officer for the Georgia Department of Juvenile Justice; and CARLA MATHIS, Individually and in Her Capacity as Probation Officer for the Georgia Department of Juvenile Justice, | : : : : : | |
| Defendants. | : | No. CV208-038 |

### ORDER

Plaintiff, Lewanna E. Jordan, as Natural Guardian and Next Best Friend of O.J.S., a child, filed the above-captioned case against Defendants, Rhonda Moody, deceased, individually and in her official capacity as a probation officer for the Georgia Department of Juvenile Justice, and Carla Mathis, individually and in her official capacity as a probation officer for the Georgia Department of Juvenile Justice.

Plaintiff filed her amended complaint on December 12, 2008. Doc. No. 21. In her amended complaint, Plaintiff asserts claims against Defendants for: (1) violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) liability under 42 U.S.C. § 1983; (3) violations of the Due Process Clause of Article I, Section I, Paragraph I of the Georgia Constitution; (4) punitive damages; (5) attorney's fees under 42 U.S.C. § 1988; and (6) costs under Georgia law, O.C.G.A. § 9-4-9.

Currently before the Court is Defendants' motion to dismiss Defendant Mathis in her individual and official capacities and Defendant Moody in her official capacity. Doc. No. 28.[1] For the reasons set forth below, Defendants' motion will be **GRANTED**.

**BACKGROUND**

Viewed in the light most favorable to Plaintiff, the facts of this case are as follows. On or about March 29, 2006, Defendants, probation officers for the Georgia

---

[1] Because Defendant Moody has not moved for dismissal in her individual capacity, Plaintiff's claims against Moody in her individual capacity are in no way implicated by this Order.

Department of Juvenile Justice (hereinafter "DJJ"), took O.J.S. into custody and placed him in the Department's Waycross Regional Youth Detention Center (hereinafter "YDC"), without any judicial intervention, for an alleged aftercare violation. The Glynn County Juvenile Court had previously adjudicated O.J.S. delinquent and committed him to DJJ for two years. After DJJ detained him, O.J.S. unsuccessfully sought to invoke his right to counsel as provided by DJJ. Counsel for O.J.S. contacted DJJ regarding O.J.S., but Defendants ignored said counsel and refused to allow counsel access to O.J.S.

Plaintiff alleges that after O.J.S.' initial detention by Defendants, Defendants conducted a preliminary hearing without the presence of O.J.S.' counsel, and with full knowledge of the repeated attempts of O.J.S.'s counsel to obtain access to O.J.S. According to Plaintiff, at this preliminary hearing, Defendants employed subterfuge and trickery to obtain what Plaintiff refers to as an involuntary and incriminatory waiver from an uncounseled O.J.S. According to Plaintiff, at no point prior to, or during, the preliminary hearing did O.J.S. waive his right to counsel.

More than thirty days after the preliminary hearing, while O.J.S. remained incarcerated at YDC, and after O.J.S.' counsel contacted Defendants, Defendants traveled to the YDC facility to obtain O.J.S.' signature on a DJJ-prepared affidavit. The affidavit alleged that O.J.S. had not had any contact with his counsel, had knowingly and voluntarily waived his right to counsel, as well as his right to a final revocation hearing, and had admitted to the violations alleged by Defendants. Based on these admissions, DJJ detained O.J.S. for thirty days at its YDC facility.

Plaintiff alleges that Defendants used deceit, subterfuge, trickery, misrepresentation, and an abuse of their inherent authority over juveniles in their custody, to secure this allegedly false and uncounseled waiver and admission from O.J.S. Plaintiff further alleges that Defendants obtained this waiver and incriminatory admission only through their continued denial of O.J.S.' access to counsel.

While detained at the YDC facility, O.J.S. challenged his incarceration by filing a habeas corpus petition with the Superior Court of Ware County, Georgia. On September 5, 2006, the Superior Court entered an Order, dated August 31, 2006, granting O.J.S.' habeas corpus petition. In the Order, the

Superior Court held that, because DJJ chose to afford juveniles the right to counsel in post-commitment hearings, it could not arbitrarily and capriciously abrogate that right, as it had done at O.J.S.'s hearing. The Superior Court also held that O.J.S. was entitled to a final hearing, despite his written waiver of such hearing. Finally, the Superior Court held that O.J.S.' Due Process rights had been violated. Specifically, the Superior Court held that a child in DJJ's custody, and/or the child's parent, is entitled to, at least, a minimal degree of due process, which includes the right to counsel obtained by the child, the parents, or otherwise, and that DJJ is not entitled to ignore counsel for the child. The Superior Court further held that due process includes the right to a full and final hearing, which was not provided in the case of O.J.S.

**LEGAL STANDARD**

In determining the merits of a motion to dismiss, a court must assume "that all the allegations in the complaint are true (even if doubtful in fact)," see, e.g., Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), and must construe the averments in the light most favorable to the plaintiff. See,

e.g., Sofarelli v. Pinellas County, 931 F.2d 718, 721 (11th Cir. 1991); see also Gunn v. Title Max of Alabama, Inc., No. 08-12197, 2008 U.S. App. LEXIS 19734, at *3-4 (11th Cir. Sept. 16, 2008).

However, "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Twombly, 550 U.S. at 555 (internal citation omitted). Rather, the contentions contained in the plaintiff's complaint must "plausibly suggest," and "not merely [be] consistent with," a recognized cause of action under the governing law. Id. at 557 ; see also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 n.43 (11th Cir. 2008) (discussing Twombly); Gunn, 2008 U.S. App. LEXIS 19734, at *4 ("[T]he plaintiff's 'factual allegations must be enough to raise a right to relief above the speculative level.'").

**DISCUSSION**

**I. Liability under Section 1983**

**A. Defendants in Their Official Capacities**

In her complaint, Plaintiff claims that Defendants are

-6-

liable, in their official capacities, under § 1983 for violating O.J.S.' right to Due Process under the Fourteenth Amendment. Defendants argue that, in their official capacities, they are not "persons" subject to suit under § 1983. This proposition is well-established by law. See, e.g., Will v. Mich. Dept. Of State Police, 491 U.S. 58, 71 (1989). Further, it is conceded by Plaintiff in her response brief. Because a suit against a state official in her official capacity is no different from a suit against the state itself, id., and because the state is not a "person" subject to suit under § 1983, id., Plaintiff's claims under § 1983 against Defendants in their official capacities must be dismissed.

**B. Defendant Mathis in Her Individual Capacity**

Plaintiff also claims that Defendant Mathis is liable, in her individual capacity, under § 1983. Defendant Mathis asserts that she is entitled to dismissal in her individual capacity on several grounds. However, the Court need not discuss each of Defendant Mathis' asserted grounds, because she is entitled to qualified immunity.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). The relevant question to be answered is the "objective (albeit fact specific) question" of whether a "reasonable officer" would have believed his actions to be lawful in light of clearly established law and the information possessed by him. Anderson v. Creighton, 483 U.S. 635, 641 (1987). Further, "[t]he defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the complaint fails to allege the violation of a clearly established constitutional right." Noell v. White, 198 Fed. App'x 858, 860 (11th Cir. 2006).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Vinyard, 311 F.3d at 1346. Here, it is clear that Defendant Mathis was acting within her discretionary authority when the allegedly wrongful acts occurred. Plaintiff concedes this point. Once the defendant establishes that he was acting within his discretionary authority, "the burden shifts to the

plaintiff to demonstrate that qualified immunity is not appropriate." Noell, 198 Fed. App'x at 861.

Because Defendant Mathis has met her burden of showing that she was acting within her discretionary authority, the burden is on Plaintiff to show that qualified immunity is not appropriate. To do so, she must show that the constitutional violation alleged was clearly established at the time it allegedly occurred. Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008). Plaintiff has failed to meet this burden. Plaintiff does not cite, and the Court could not find, one case putting Defendant Mathis on notice that O.J.S. was entitled to his retained counsel at the post-adjudicative hearing. Although the Supreme Court, in In re Gault, 387 U.S. 1, 34-36 (1967), held that a juvenile has the right to counsel in a proceeding "where the issue is whether the child will be found to be 'delinquent'," the hearing in this case was not such a hearing. In In re Gault, the Supreme Court specifically limited their holding to apply only to adjudication hearings and expressly declined to expand its holding to "the post-adjudicative or dispositional process." Id. at 13. See also id. at 31 n.48 ("The problems of pre-adjudication treatment of juveniles, and of post-adjudication

disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process.").

In this case, O.J.S. had already been found to be delinquent, and had been committed to DJJ for two years. The preliminary hearing at issue in this case is more akin to a revocation hearing for a probationer or parolee. The United States Supreme Court has expressly declined to hold that probationers or parolees have a right to retained counsel at revocation hearings. See, e.g., Gagnon v. Scarpelli, 411 U.S. 778 (1973); Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 26 (1981). In fact, in Gagnon, the lower court held that a probationer at a revocation hearing must be allowed access to retained counsel under the Due Process Clause. Gunsolus v. Gagnon, 454 F.2d 416, 421 (7th Cir. 1971), rev'd in part sub nom. Gagnon v. Scarpelli, 411 U.S. 778 (1973). On appeal, the Supreme Court reversed this holding, and specifically left open the question of "whether a probationer or parolee has a right to be represented at a revocation hearing by retained counsel." 411 U.S. 778, 784 n.6.

Although Plaintiff, in her response brief, cites <u>Morrisey v. Brewer</u>, 408 U.S. 471, 489 (1972), for its recitation of various due process rights afforded to probationers, this list of rights from <u>Morrisey</u> does not include the right to retained counsel. In fact, in <u>Morrisey</u>, the Supreme Court expressly declined to decide the question "whether the parolee is entitled to the assistance of retained counsel." <u>Morrisey</u>, 408 U.S. at 489. Further, Plaintiff's complaint does not allege that Defendants violated any of the rights listed by the Court in <u>Morrisey</u>.

This Court recognizes that the Ware County Superior Court granted O.J.S.'s habeas petition. It should be noted, however, that the Superior Court expressly declined to reach the issue "of whether a child has a right to counsel in post-commitment hearings before the Department." Superior Court Order at 4. Exhibit "A" to Defendant's Motion to Dismiss. Doc. No. 7.[2] Instead, the Superior Court concluded that,

---

[2]Despite expressly declining to reach this issue, the Superior Court went on to state that the "minimal degree of due process" owed to a juvenile in a post-adjudicative hearing included "the right to counsel obtained by the child, the parents, or otherwise." Superior Court Order at 5. Although this holding may very well have been within the Superior Court's sound discretion, the Superior Court cited no case from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court to support its

because the DJJ chose to afford juveniles that right, it could not arbitrarily and capriciously abrogate that right. Id. Although the Superior Court was well within its province in holding that the DJJ capriciously abrogated a right that it had granted to other juveniles, such conduct does not violate the Due Process Clause of the Fourteenth Amendment and, therefore, does not play a role in the disposition of the instant case.

In light of the absence of governing precedent, it cannot be said that Defendant Mathis violated a clearly established constitutional right. Because Defendant Mathis did not violate a clearly established constitutional right, the Court need not decide whether O.J.S. had a constitutional right to counsel at his preliminary hearing. See Pearson v. Callahan, 129 S. Ct. 808, 818 (Jan. 21, 2009)(abandoning the rigid order of battle mandated by Saucier v. Katz, 533 U.S. 194 (2001)). Defendant Mathis is entitled to qualified immunity in her individual capacity on Plaintiff's § 1983 claim.

---

holding. Therefore, the Superior Court's holding does not inform this Court's analysis of whether Defendant was on notice of the unconstitutionality of her conduct.

-12-

## II. **Violation of Due Process under Georgia Constitution**

Plaintiff's next claim is for a violation of the Due Process Clause in Article I, Section I, Paragraph I of the Georgia Constitution. Defendants assert that Plaintiff's state constitutional claim is barred by sovereign immunity. The Georgia Constitution extends sovereign immunity to the State and all if its departments and agencies except as specifically provided in paragraph IX of article I, § II, which provides:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. art. I, § II, para. IX(e).

In her response brief, Plaintiff concedes that she cannot pursue a claim based on the Georgia Constitution. Therefore, Plaintiff's Georgia Due Process claim is dismissed.

## III. **Punitive Damages**

Because Plaintiff's federal and state constitutional claims against Defendant Mathis are barred, Defendant Mathis is not liable for punitive damages. Therefore, Plaintiff's

-13-

claim against Defendant Mathis for punitive damages is dismissed.

IV. **Attorney's Fees under Section 1988**

Because Plaintiff's § 1983 claim against Defendant Mathis is barred, Defendant Mathis is not liable for attorney's fees under § 1988. Therefore, Plaintiff's claim against Defendant Mathis for attorney's fees is dismissed.

V. **Costs under Georgia Law**

In her complaint, Plaintiff alleged that she was entitled to costs under Georgia law, O.C.G.A. § 9-4-9. In their motion to dismiss, Defendants correctly observed that costs under O.C.G.A. § 9-4-9 are only available in declaratory judgment actions. Plaintiff concedes this point in her response brief and admits that she cannot pursue relief under O.C.G.A. § 9-4-9. Accordingly, Plaintiff's claim for costs under Georgia law is dismissed.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Defendant Mathis in her individual and official capacities and Defendant Moody in her official capacity is **GRANTED**. Doc No. 28. Plaintiff's complaint against Defendant

Mathis, in both her individual and official capacities, is **DISMISSED**. Plaintiff's complaint against Defendant Moody in her official capacity is also **DISMISSED**.

SO ORDERED this __8th__ day of April, 2009.

_____
Judge, United States District Court
Southern District of Georgia